WHIPPLE, C.J.
*1003 In this matter involving rental and purchase agreements between the parties, defendant, Robert J. Rathe, Jr. ("Robert"), appeals from the trial court's January 26, 2017 judgment, in favor of plaintiff, Jonathan Brant Rathe ("Brant"), and against Robert, granting Brant declaratory judgment relief, finding that Robert was in breach of contract, dismissing Robert's reconventional demand, and awarding Brant all damages claimed and attorney's fees and costs.[1] Robert additionally seeks review of two prior judgments rendered in this matter, granting various exceptions to his third-party demands. For the following reasons, we vacate in part and affirm in part the January 26, 2017 judgment and remand with instructions. Additionally, we decline to review the two prior judgments granting various exceptions to Robert's third-party demands, given that these judgments lack decretal language.
FACTS AND PROCEDURAL HISTORY
On October 9, 2012, Brant and his father, Robert, entered into an "Agreement to Purchase/Rent House & Transfer Land" (referred to hereafter as "the 2012 Agreement to Purchase/Rent"), setting forth a purchase price and a monthly rental amount for Brant's home located at 713 E. 4th Avenue in Covington, Louisiana. The 2012 Agreement to Purchase/Rent did not contain a date by which the sale of the house to Robert was to be confected, but reserved unto Brant the right to renegotiate the monthly rent in the event that the house was "not settled" by December 31, 2013.[2] A separate section of the agreement, entitled "Plantation Property," provided that "[c]oncurrent with this agreement," Robert agreed to "gift/transfer" five acres of land to Brant and Sarah Rathe, Brant's wife, "for the sole purpose of building a family home."[3]
Subsequently, Brant and Robert executed an Addendum to the Agreement to Purchase/Rent, dated December 6, 2013, through which the monthly rental charge for Brant's home was renegotiated.[4] In the December 6, 2013 Addendum, Brant again reserved the right to renegotiate the amount of monthly rent in this agreement if the house was "not settled" by December 31, 2014. A few weeks later, on January 13, 2014, Brant and Robert executed a *1004 second Addendum, again renegotiating the monthly rental charge.[5] The 2012 Agreement to Purchase/Rent and two addenda were drafted by Brant.
Thereafter, Robert drafted an "Agreement to Purchase and Sell" (hereafter referred to as "the 2014 Purchase Agreement") with regard to Brant's home, which was executed on February 21, 2014. In the 2014 Purchase Agreement, the parties agreed that the act of sale was to take place on or before March 31, 2014,[6] for a purchase price of $337,060.00, with a $3,000.00 deposit to be paid by the purchaser. The 2014 Purchase Agreement contained two lines for "purchaser" signatures and two lines for "seller" signatures. The signatures on the "purchaser" lines are "NuFarms, LLC," a single-member limited liability company of which Robert is the managing member, and Robert's signature. Brant signed both seller lines.
With regard to any breach by the purchaser, the 2014 Purchase Agreement provided that the "[s]eller shall have the right to demand specific performance; or at [s]eller's option, [s]eller shall have the right to reoffer the property for sale and may declare the deposit, ipso facto, forfeited" and that, "[i]n either event, [s]eller shall have the right to recover any costs and/or fees, including expenses and reasonable attorney's fees, incurred as a result of this agreement or breach thereof." Nonetheless, despite the language that the deposit may be declared forfeited upon the purchaser's breach, the 2014 Purchase Agreement further provided that in the event the sale did not close for any reason, the $3,000.00 deposit would "be credited to the seller and considered as rent under the terms of the existing rental agreement between the parties."
Neither Robert nor Nu Farms, LLC executed an act of sale of Brant's home by the deadline of March 31, 2014. Even after the date had passed, Brant attempted to facilitate the sale of his home by asking both his father, Robert, and his mother, Jennifer Rathe, if they would like to purchase the house.[7] However, when a sale to either of his parents did not come to fruition, Brant started to market his home for sale and ultimately entered into a purchase agreement with a third party.
Upon learning that Brant had entered into a purchase agreement with a third party, Robert filed a "Notice of ... Agreement to Purchase/Rent House and Transfer Land" in the conveyance records of St. Tammany Parish on May 28, 2015, in which he represented that Brant's home *1005 was subject to his right to purchase pursuant to the 2012 Agreement to Purchase/Rent; that pursuant to his obligation under the 2012 Agreement to Purchase/Rent, he and his former wife Jennifer had donated five acres of property to Brant and his wife Sarah as additional consideration for the right to purchase; and that he intended to enforce his right to purchase Brant's home. Robert acknowledged that he filed this notice in the conveyance records to block the sale of Brant's home.[8]
Brant then instituted this suit against Robert on June 18, 2015, contending that the 2014 Purchase Agreement had replaced the earlier informal 2012 Agreement to Purchase/Rent as to the sale of Brant's home and that Robert had breached the 2014 Purchase Agreement by failing to execute an act of sale by the March 31, 2014 deadline, thus entitling Brant to reoffer the property for sale. Brant further alleged that despite attempts to have Robert amicably remove the notice he had filed in the conveyance records, which was an impediment to the sale of Brant's home to a third party, Robert had refused, constituting a bad faith breach of contract. Moreover, Brant contended that he was entitled to back-due rent pursuant to the original 2012 agreement and addenda, which, despite the subsequent 2014 Purchase Agreement as to the sale of the home, remained in place as to the parties' rental arrangement. Accordingly, Brant sought, among other things, a declaratory judgment, declaring that Robert no longer had any right to purchase or interest Brant's home and that the objection to the sale of Brant's home to a third party that Robert filed in the conveyance records is invalid; damages for back-due unpaid rent and "any other damages or relief under law and equity"; attorney's fees; and costs.
Robert then filed an answer and reconventional demand against Brant, contending that he and his former wife, Jennifer, had paid consideration valued at more than $108,500.00 for their right to purchase Brant's home, including: the donation of a five-acre tract of land; the forgiveness of an $8,500.00 interest-free loan; and approximately $15,000.00 in repairs made to Brant's home. He further contended that Brant's attempt to sell the home to a third party constituted a bad faith attempt to repudiate or rescind the provisions of the 2012 Agreement to Purchase/Rent so as to deprive him and Jennifer of the right to purchase Brant's home. Thus, Robert sought, among other things, a declaratory judgment declaring that he has a right to purchase the home or, alternatively, a rescission of the donation of the five-acre tract of land and a revival of the $8,500.00 interest-free loan, damages, and attorney's fees.
Robert also filed a third-party demand against Brant's wife, Sarah, seeking rescission of the donation of the five-acre tract in the event it was determined that his right to purchase Brant's home was null or had been cancelled. Moreover, he filed a third-party demand against his former wife Jennifer, contending that he entered into the 2012 Agreement to Purchase/Rent during the existence of his marriage to *1006 Jennifer such that the obligations thereunder were community obligations and any rights pursuant to that contract also belonged to the former community property regime between them. Thus, he contended that she was a necessary party to the proceedings.
Sarah responded to Robert's third-party demand against her by filing peremptory exceptions raising the objections of no right of action, no cause of action, and prescription. By judgment dated May 25, 2016, the trial court granted Sarah's exceptions of no cause of action and no right of action, but denied the exception of prescription.
Jennifer likewise filed peremptory exceptions of no cause of action and no right of action, as well as a declinatory exception of lack of subject matter jurisdiction as to the third-party demand Robert filed against her. By judgment dated June 21, 2016, the trial court granted Jennifer's exceptions of no cause of action and lack of subject matter jurisdiction.
The matter then proceeded to trial on July 20, 2016. Following a bench trial, the trial court rendered judgment dated January 26, 2017, declaring as follows: that Robert has no right or interest to purchase Brant's home; that the five-acre donation was not consideration for the rental/purchase agreement; that Robert was in breach of contract and had forfeited his $3,000.00 deposit; and that Robert was in bad faith in filing the notice of agreement in the conveyance records attesting that he intended to exercise his right to purchase Brant's home, thus rendering him liable for costs of $2,961.70 and attorney's fees of $41,290.00. The judgment further ordered that Robert was "liable for all damages claimed by Brant ... in the above-captioned lawsuit, including $374.00 and $494.00 representing the home inspection and attorney fees";[9] that Robert was liable to Brant for rent in the amount of $28,500.00, together with legal interest and costs; and that "all declaratory relief as requested by Brant ... in his Petition is granted and that the Court also awards interests [sic] and costs." Finally, the judgment dismissed Robert's reconventional demand.
From this judgment, Robert appeals, listing twelve assignments of error and twenty-five issues for review. Ten of the listed assignments of error address alleged errors as to the claims between Brant and Robert, including the denial of certain exceptions filed by Robert as to Brant's claims against him and alleged errors in the January 26, 2017 judgment rendered after the bench trial. The remaining two alleged errors address the May 25, 2016 judgment granting Sarah's exceptions of no cause of action and no right of action and the June 21, 2016 judgment granting Jennifer's exceptions of no cause of action and lack of subject matter jurisdiction, respectively, both of which judgments Robert terms "interlocutory." Additionally, Robert has filed with this court a "Motion to Take Judicial Notice of Conveyance of *1007 Property Subject to Lawsuit," which we will address herein.
MOTION TO TAKE JUDICIAL NOTICE OF CONVEYANCE OF PROPERTY SUBJECT TO LAWSUIT
In this motion, Robert requests that this court take judicial notice of the fact that Brant sold his home that is the subject of this lawsuit to his mother (Robert's former wife), Jennifer, after the trial of this matter and the rendition of judgment, arguing that the subsequent sale of the property "will have an effect on the remedies available to [him] on appeal." Robert argues that because the original 2012 Agreement to Purchase/Rent was confected during the existence of his marriage to Jennifer, it was a community obligation, such that her later purchase of Brant's home "may be evidence" that the 2012 Agreement to Purchase/Rent was fulfilled by the purchaser. He further asserts that the purchase price is "relevant and material to the issues of this case" and that the trial court's denial of his reconventional demand that a declaratory judgment be issued declaring that he has a right to purchase Brant's home "would now be moot."
Brant opposes the motion. He argues that while this court may take judicial notice of any public record, the subsequent sale of his home has no relevance to this appeal and that considering the subsequent sale as evidence in determining the issues in this case herein would be inappropriate.
Louisiana Code of Civil Procedure 2164 provides that the appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, jury instructions, judgments, and other rulings, unless otherwise designated. City of Hammond v. Parish of Tangipahoa, 2007-0574 (La. App. 1st Cir. 3/26/08), 985 So.2d 171, 176. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. As an appellate court, we have no jurisdiction to receive new evidence. City of Hammond, 985 So.2d at 176-177.
Although this court is generally precluded from admitting new evidence, we are mandated by Article 202(A) of the Louisiana Code of Evidence to take judicial notice of the laws of the United States, of every state, territory, and other jurisdiction of the United States, and of the ordinances enacted by any political subdivision within the court's territorial jurisdiction whenever certified copies of the ordinances have been filed with the clerk of that court. See also LSA-R.S. 13:3712(B). In addition, a court must take judicial notice of, among other things, ordinances enacted by any political subdivision of the State of Louisiana, if a party requests it and provides the court with the information needed by it to comply with the request. LSA-C.E. art. 202(B)(1)(c). Moreover, judicial notice of such legal matters may be taken at any stage of the proceeding. LSA-C.E. art. 202(D). City of Hammond, 985 So.2d at 177.
Given that the sale at issue in this motion occurred after the district court signed its judgment, the act of sale of which Robert seeks to have this court take judicial notice clearly was not part of "the record on appeal" upon which this court shall render judgment. See LSA-C.C.P. art. 2164. Nor is it one of the items listed in LSA-C.E. art. 202 of which this court is required to take judicial notice. For these reasons, we deny Robert's Motion to Take Judicial Notice of Conveyance of Property *1008 Subject to Lawsuit. See City of Hammond, 985 So.2d at 177.
CLAIMS BETWEEN BRANT AND ROBERT AND THE RESULTING JANUARY 26, 2017 JUDGMENT
(Assignments of Error Nos. 1 - 9 & 12)
Through these assignments of error and the numerous related "issues for review," Robert challenges the denial of various exceptions he filed to Brant's petition and the rulings of the trial court in the January 26, 2017 judgment disposing of the claims between him and Brant following the bench trial. Based on our thorough review of the record, we find no merit to Robert's assignments of error.
As to the trial court's interpretation of the contracts at issue, the interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. LSA-C.C. art. 2046. When the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. LSA-C.C. art. 2045 ; Molina v. Oilfield Production Contractors, Inc., 2017-0455 (La. App. 1st Cir. 12/29/17) 241 So.3d 337, 340.
A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. LSA-C.C. art. 2053 ; Amend v. McCabe, 95-0316 (La. 12/1/95), 664 So.2d 1183, 1187-1188. Whether a contract is ambiguous is a question of law. Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. Amitech U.S.A., Ltd, v. Nottingham Construction Company, 2009-2048 (La. App. 1st Cir. 10/29/10), 57 So.3d 1043, 1058, writs denied, 2011-0866, 2011-0953 (La. 6/17/11), 63 So.3d 1036, 1043.
Regarding Robert's argument that the trial court erred in finding him personally to be a party to the 2014 Purchase Agreement, we find no merit to that argument. Notably, Robert signed the 2014 Purchase Agreement as a "purchaser" without limiting or qualifying the capacity in which he signed, such as by indicating that he was signing in his capacity as an officer or managing member of Nu Farms, LLC, rather than in his personal capacity. Moreover, as noted by the trial court in its reasons for judgment, the 2014 Purchase Agreement, which was drafted by Robert, clearly refers to the "existing rental agreement between the parties," and Robert acknowledged at trial that Nu Farms did not have a rental agreement with Brant. Thus, we find no error in the trial court's finding that Robert was individually bound as a "purchaser" under the 2014 Purchase Agreement. Robert did not purchase Brant's home by the deadline set forth in the 2014 Purchase Agreement and, thus, as determined by the trial court, Robert was in breach of contract.
We likewise find no error in the trial court's obvious rejection of Robert's contention that the right to purchase Brant's home he previously acquired through the 2012 Agreement to Purchase/Rent remained an enforceable right.
*1009 As found by the trial court, the 2014 Purchase Agreement "[b]y its very terms" reflect that it was to be read along with the rental terms contained in the prior agreements between Brant and Robert. But, as to Brant and Robert's prior agreement for the purchase of the home, the parties agreed to different terms in the 2014 Purchase Agreement, in that the sale price for the home was changed and a deadline by which the act of sale was to be closed was set, where none had existed before. Moreover, and more importantly, the 2014 Purchase Agreement further provided that in the event the purchaser failed to comply with the agreement in the time specified, the seller "shall have the right to reoffer the property for sale." (Emphasis added). Thus, the trial court's rejection of Robert's argument that his right to purchase Brant's home under the earlier 2012 Agreement to Purchase/Rent remained enforceable is amply supported by the record on appeal.
Additionally, given that Robert agreed in the 2014 Purchase Agreement that Brant would have the right to reoffer the property for sale in the event the purchasers failed to execute the act of sale in the time specified, which Robert (and Nu Farms, LLC) failed to do, we likewise find that the record amply supports the trial court's finding that Robert was liable for his bad faith breach of contract by his actions in attempting to prohibit Brant from exercising that right by filing the aforementioned notice in the conveyance records.
While not separately addressing his remaining assignments of error as to the trial court's rulings related to the claims between Brant and Robert, we likewise find no merit to Robert's remaining assignments of error. Rather, we find no error in the trial court's denial of Robert's exceptions and further find the trial court's findings to be amply supported by the record and its interpretation of the contracts at issue to be legally correct.
We note, however, that the January 26, 2017 judgment contains certain provisions that are indefinite and imprecise. Specifically, with regard to damages, the judgment provides that "Robert Rathe is liable for all damages claimed by Brant Rathe in the above-captioned lawsuit, including $374.00 and $494.00 representing the home inspection and attorney fees." (Emphasis added). Additionally, the judgment further provides that "all declaratory relief as requested by Brant Rathe in his Petition is granted and ... the Court also awards interests and costs."
Although the form and wording of judgments is not sacramental, judgments must be precise, definite and certain, and the amount of recovery should be determinable from the judgment without reference to an extrinsic source. Crockerham v. Weyerhaeuser Holden Wood Prod., 2016-0331 (La. App. 1st Cir. 6/2/17), 223 So.3d 533, 543, writ denied, 2017-1121 (La. 10/27/17), 228 So.3d 1232. Because the exact amount of damages awarded, whether the award includes only the sums of $374.00 and $494.00 or whether the award includes some other amounts as "all damages claimed by Brant Rathe in the above-captioned lawsuit," cannot be determined from this judgment, this portion of the trial court's judgment is not proper and must be vacated. Similarly, the portion of the judgment granting "all declaratory relief as requested by Brant Rathe in his Petition" is likewise uncertain without reference to an extrinsic source, namely, the petition. As such, this portion of the judgment is improper and must be vacated. The matter is remanded to the district for an award of a precise and certain amount of damages and specific declaratory judgment relief, without reference to an extrinsic *1010 source. See Crockerham, 223 So.3d at 543-544. See also, In re Succession of Wagner, 2008-0212 (La. App. 1st Cir. 8/8/08), 993 So.2d 709, 724-725, Vanderbrook v. Coachmen Indus., Inc., 2001-0809 (La. App. 1st Cir. 5/10/02), 818 So.2d 906, 913-914, and Clark v. Diamond B. Const., 2000-2146 (La. App. 1st Cir. 12/28/01), 803 So.2d 1113, 1116-1117. In all other respects, we affirm the January 26, 2017 judgment.
MAY 25, 2016 JUDGMENT GRANTING SARAH'S EXCEPTIONS OF NO CAUSE OF ACTION AND NO RIGHT OF ACTION
(Assignment of Error No. 10)
Robert further seeks review of the trial court's May 25, 2016 judgment, which granted Sarah's exceptions of no cause of action and no right of action as to the third-party demand Robert had filed against her. As noted above, Robert refers to this judgment as an "interlocutory judgment" and asserts that he is entitled to seek review of this judgment together with his appeal of the judgment on the merits as to the main and reconventional demands.
At the outset, however, we note that while the May 25, 2016 judgment grants Sarah's exceptions of no cause of action and no right of action, it contains no decretal language and fails to dismiss Robert's third-party demand against her. A judgment that maintains a peremptory exception or grants a motion for summary judgment, yet fails to dismiss a party's claims, lacks decretal language and is not considered a final judgment over which appellate jurisdiction extends. See Gaten v. Tangipahoa Parish School System, 2011-1133 (La. App. 1st Cir. 3/23/12), 91 So.3d 1073, 1074 ; Johnson v. Mount Pilgrim Baptist Church, 2005-0337 (La. App. 1st Cir. 3/24/06), 934 So.2d 66, 67.
Indeed, had the judgment dismissed Robert's claims against Sarah, it would have been immediately appealable. See LSA-C.C.P. art. 1915(A)(1). Thus, given the lack of decretal language dismissing Robert's third-party demand, the May 25, 2016 judgment presents nothing for us to review. As such, we decline to address Robert's arguments with regard to this judgment. At such time as the trial court renders a proper final judgment with decretal language, Robert will have the opportunity to appeal that judgment.
JUNE 21, 2016 JUDGMENT GRANTING JENNIFER'S EXCEPTIONS OF NO CAUSE OF ACTION AND LACK OF SUBJECT MATTER JURISDICTION
(Assignment of Error No. 11)
Robert also seeks review of the trial court's June 21, 2016 judgment granting Jennifer's exceptions of no cause of action and lack of subject matter jurisdiction as to the third-party demand Robert filed against her. As with the May 25, 2016 judgment, while this judgment grants Jennifer's exceptions, it contains no decretal language and fails to dismiss Robert's third-party demand against her. Thus, for the same reasons as set forth with regard to the May 25, 2016 judgment on Sarah's exceptions, we must conclude that the June 21, 2016 judgment presents nothing for us to review with regard to Robert's third-party demand against Jennifer. See Johnson, 934 So.2d at 67. Upon the trial court's rendition of a proper final judgment with decretal language as to Jennifer's exceptions as well, Robert would likewise have an opportunity to appeal that judgment.
Moreover, while the June 21, 2016 judgment also awards Jennifer costs and attorney's fees with regard to the third-party *1011 demand, because we are unable to review the merits of the judgment as to the exceptions in the absence of decretal language dismissing this third-party demand, we likewise decline to review the sanction award related to the filing of that incidental action at this time.
CONCLUSION
For the above and foregoing reasons, the Motion to Take Judicial Notice of Conveyance of Property Subject to Lawsuit filed by Robert Rathe is denied. The portions of the trial court's January 26, 2017 judgment ordering that "Robert Rathe is liable for all damages claimed by Brant Rathe in the above-captioned lawsuit, including $374.00 and $494.00 representing the home inspection and attorney fees" and that "all declaratory relief as requested by Brant Rathe in his Petition is granted and that the Court also awards interests and costs" are vacated, and this matter is remanded to the trial court with instructions to enter a judgment setting forth the particular amount of damages and the specific declaratory judgment relief awarded, without reference to extrinsic sources. In all other respects, the January 26, 2017 judgment is affirmed.
Because the May 25, 2016 judgment granting Sarah Rathe's exceptions of no cause of action and no right of action and the June 21, 2016 judgment granting Jennifer Rathe's exceptions of no cause of action and lack of subject matter jurisdiction lack decretal language as to the third-party demands filed by Robert Rathe against these parties, we decline to review these judgments in this appeal of the January 26, 2017 judgment.
Costs of this appeal are assessed against Robert J. Rathe, Jr.
MOTION TO TAKE JUDICIAL NOTICE OF CONVEYANCE OF PROPERTY SUBJECT TO LAWSUIT DENIED; JANUARY 26, 2017 JUDGMENT VACATED IN PART AND AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.

Because all the parties herein share the same last name, they are referenced by their first names for ease of understanding. Our use of such for ease of reference in no way signifies a lack of respect for the Rathe family or the issues between its members.

The purchase price of the home was listed as $322,560.00, and the monthly rental was $2,000.00, with $1,500.00 to be paid by Robert on the first of each month and the outstanding balance to be paid in full on the closing date of purchase.

By Act of Donation dated June 17, 2014, Robert and his wife, Jennifer Rathe, donated Lot 8A1 in The Plantation development in St. Tammany Parish to Brant and his wife, Sarah Rathe.

The December 6, 2013 Addendum provided that $2,250.00 was to be paid on the first of each month, commencing January 1, 2014, and that the outstanding balance (calculated as the total months of rent X $500.00) would be paid in full on the "closing date of purchase." The outstanding balance as of December 31, 2013 was listed as $7,000.00.

The January 13, 2014 Addendum provided that $2,500.00 was to be paid on the first of each month, commencing January 1, 2014, and that the outstanding balance (calculated as the total months of rent X $2,500.00) would be paid in full on the "closing date of purchase." The outstanding balance as of December 31, 2013 was again listed as $7,000.00.

While the 2014 Purchase Agreement lists the deadline for the act of sale as March, 31, 2013 , the trial court concluded that this was a typographical error given that the agreement was not executed until February 21, 2014, and that the intention of the parties was to list the closing deadline as March 31, 2014 . Robert has not challenged this finding on appeal.

Although not a party to any rental agreement, Brant's mother, Jennifer, was residing in Brant's home. She testified that the original intent of the lease and eventual purchase of Brant's home was that she and Robert would use it as an "interim home" until they built a new home. However, at the point when she moved into Brant's home, she and Robert had separated. When Brant later offered to sell the home to her, she indicated to him at that time that she was not in a financial position to purchase it. Robert also acknowledged at trial that he had communicated to Brant "perhaps once or twice over the course of these events" that he had no interest in buying Brant's home.

In fact, the parties stipulated that the sale of Brant's home to the third-party purchasers was not accomplished as a result of the notice that Robert filed in the conveyance records. Although the parties to the purchase agreement had agreed to extend the purchase agreement on three separate occasions, on June 22, 2015, September 11, 2015, and November 3, 2015, it was ultimately cancelled on January 1, 2016, due to this pending litigation between Robert and Brant, and the prospective purchasers demanded damages of $374.00 for the home inspection that had been performed and $362.00 in attorney's fees related to the closing that did not occur.

As noted in footnote 8, the parties stipulated at the beginning of trial that the prospective purchasers had demanded damages of $374.00 for the home inspection that had been performed and $362.00 in attorney's fees related to the closing that did not occur. Despite these stipulated amounts, in his post-trial memorandum, Brant claimed that he had to pay the prospective purchaser $494.00 in legal fees and that the bill was stipulated to and in evidence. However, documents establishing the amount of attorney's fees incurred by the prospective purchasers were apparently attached to the deposition of one of the prospective purchasers, and that deposition was not offered into evidence upon the parties entering various stipulations, including the stipulation as to the amounts of the home inspection and the attorney's fees.