STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 CA 1620

STEPHEN MEDWICK, MAXWELL PERRY, BRANDON RUSSELL
AND SCOTT PELUSO

VGW by CHH

AHP by CHH

CHH

VERSUS

MADCON CORPORATION

Judgment Rendered: __AUG 0 8 2022__

* * * * *

On Appeal from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 2019-14775

Honorable Raymond S. Childress, Judge Presiding

* * * * *

Jeannette M. Delise
Bobby J. Delise
New Orleans, LA
and
Alton J. Hall, Jr.
Covington, LA

Attorneys for Plaintiffs-Appellees,
Stephen Medwick, Maxwell Perry and
Scott Peluso

Jason P. Waguespack
Kathleen K. Charvet
Wendell F. Hall
New Orleans, LA
and
Tom W. Thornhill
Slidell, LA

Attorneys for Defendant-Appellant,
MADCON Corporation

* * * * *

BEFORE: WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

**HESTER, J.**

In this suit for breach of contract and detrimental reliance, defendant, MADCON Corporation, appeals the trial court's judgment awarding damages to plaintiffs, Stephen Medwick, Maxwell Perry, and Scott Peluso. For the reasons that follow, we vacate the trial court's judgment and render judgment as set forth below.

## FACTS AND PROCEDURAL HISTORY

Defendant, MADCON Corporation, is a Louisiana-based international commercial diving contractor, providing highly technical and patented marine and subsurface work to the offshore gas industry. Bruce Trader is the president and owner of MADCON, which has been in business since 1987. In late 2018, MADCON secured a contract to perform subsurface work for a foreign company in Africa (the "Project") and began the process of staffing commercial divers for the Project in early 2019. Plaintiffs, all commercial divers, were offered positions on the Project.

On January 21, 2019, Mr. Trader sent a letter to Mr. Perry, offering him a position as a tender on the Project, which stated as follows:

> I am excited to offer you a position on the CBG Loading Jetty Repair Project in Guinea, West Africa.
>
> Please take time to review our offer. It includes important details about your compensation, benefits and the terms and conditions of your anticipated employment with MADCON Corporation.
>
> MADCON is offering you a position as one of our Tenders. This position requires both diving and non-diving duties. Please be advised, working hours and duties will fluctuate with tides, weather, and local logistics. MADCON's goal is completing the project within 90 days.
>
> The pay for this position is a flat day rate of $335.00 per day. You will be paid via direct deposit on a bi-weekly basis. Of course, meals, lodging, travel expenses, etc., will be paid by MADCON.
>
> Your compensation will also include a bonus of $12,700.00 if the project is completed within 90 working days.
>
> If the project is completed in less than 90 days, then you will still receive your full 90 days of pay at the day rate above, plus you will receive the bonus listed above.

IF PROJECT EXTENDS PAST THE PROJECTED 90 DAYS, INCENTIVE BONUS IS ADJUSTED AS LISTED BELOW.

| DAY | | | DAY | | | DAY | | | DAY | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 91 | $12,262.07 | | 98 | $9,196.55 | | 105 | $6,131.03 | | 112 | $3,065.52 |
| | 92 | $11,824.14 | | 99 | $8,758.62 | | 106 | $5,693.10 | | 113 | $2,627.59 |
| | 93 | $11,386.21 | | 100 | $8,320.69 | | 107 | $5,255.17 | | 114 | $2,189.66 |
| | 94 | $10,948.28 | | 101 | $7,882.76 | | 108 | $4,817.24 | | 115 | $1,751.72 |
| | 95 | $10,510.34 | | 102 | $7,444.83 | | 109 | $4,379.31 | | 116 | $1,313.79 |
| | 96 | $10,072.41 | | 103 | $7,006.90 | | 110 | $3,941.38 | | 117 | $875.86 |
| | 97 | $9,634.48 | | 104 | $6,568.97 | | 111 | $3,503.45 | | 118 | $437.93 |

In addition to the compensation detailed above, you will receive a $5,000.00 bonus if you complete the project without any safety incidents.

Please indicate your agreement with these terms and accept this offer by signing, dating, and returning this agreement on or before January 22, 2019.

I look forward to working with you on this project.

On January 22, 2019, an identical letter was sent to Mr. Medwick with the only differences being that Mr. Medwick was offered a position as one of MADCON's divers at a rate of $445.00 per day with a bonus of $16,500.00 (and an altered bonus adjustment table), and Mr. Medwick was asked to indicate his agreement with the terms on or before January 23, 2019. Later, on April 1, 2019, Mr. Peluso was sent the same letter, but was offered the position of diver tender at a rate of $370.00 per day with a bonus of $14,000.00 (and an altered bonus adjustment table) and asked to indicate his agreement with the terms on or before April 3, 2019.

Tracy Dean Curl, an employee of MADCON who helped line up personnel for the Project, explained that the offers contained an incentive. If the Project was completed within 90 days, which was the projection, the plaintiffs would receive the stated amount of the bonus. However, every day after that, the incentive would decrease until it was null and void.

There is no dispute that all three plaintiffs accepted the positions offered by MADCON for the Project. All three plaintiffs also attended MADCON's pre-job meeting at the beginning of April 2019 for the personnel going to Africa.

When Mr. Medwick received his offer letter, it was his understanding that the Project was to get underway in February 2019, which would have him working through April. According to Mr. Medwick, he would have returned from Africa in time for the prime time of his year.[1] However, Mr. Medwick was not called out for the Project in February or March. Around the time of the April meeting, Mr. Medwick reached out to Mr. Trader to ask about releasing funds to him in order to cover his bills while waiting for the Project to commence, noting that he was required to pass up several offshore jobs due to the implied scheduling conflicts with the Project and due to the Project being postponed. Mr. Medwick later received $3,000.00 from MADCON. Ultimately, in late May, Mr. Medwick accepted a full-time, salaried position in the Houston area.

Similarly, after receiving his offer, Mr. Perry understood that they would be leaving for Africa in February or early March, but the date kept being pushed back every few weeks. Mr. Perry attended the April meeting, at which time he understood that the Project would commence in a week or two. By May, Mr. Perry received word that two supervisors and a diver went to Africa to start securing everything for the job site. However, in June or July of 2019, Mr. Perry realized that the MADCON job was not going to happen for him, so he secured a full-time position with another company.

Mr. Peluso, who received his offer letter in April and attended the pre-job meeting shortly thereafter, was under the assumption that he would be standing by, waiting for a phone call to leave. While he understood that there would be a lag period before the Project commenced, Mr. Peluso ended up standing by much longer than anticipated. He called MADCON and left messages four or five times between May and June of 2019, but never received any calls or communication in return. By

---

[1] Commercial diving in the Gulf of Mexico is, generally, a seasonal job with most of the work being performed April through December and not much work available in the wintertime.

June 2019, Mr. Peluso had not received the call to go to Africa, so he took a job with another company.

Ultimately, the Project commenced in late July or August 2019, and none of the plaintiffs went to Africa or performed any work on the Project. On September 11, 2019, plaintiffs[2] instituted this action for damages against MADCON, alleging that after accepting offers from MADCON for employment in connection with the Project, they each "undertook to plan their professional and personal lives" around the Project, making themselves available to fulfill their obligations with MADCON through mid-summer 2019. Plaintiffs alleged that for several months, MADCON notified them that "all was going as planned, with the exception of [the] timing of commencement of the [P]roject, and that [plaintiffs] were to be 'standing by' for notification for deployment and departure." However, despite MADCON's assurances regarding commencement of the Project, plaintiffs were never called out and MADCON did not fulfill its obligations to plaintiffs. Plaintiffs alleged that they relied on MADCON's representations to their detriment, that MADCON knew or should have known plaintiffs would reasonably rely on those representations, and that MADCON was liable to plaintiffs for all earnings under their contracts and all earnings losses incurred by plaintiffs for their reliance.

In response, MADCON answered and excepted to the petition,[3] pled affirmative defenses, including breach of contract, and asserted a reconventional demand against Mr. Medwick. In the reconventional demand, MADCON sought to recover the $3,000.00 retainer payment made to Mr. Medwick in exchange for his "refraining from accepting alternative employment" prior to the commencement of the Project. Because Mr. Medwick breached his contract of employment with

---

[2] A fourth plaintiff, Brandon Russell, voluntarily dismissed his claims against MADCON with prejudice, and the trial court signed the order of dismissal on August 27, 2020.

[3] MADCON later filed a peremptory exception raising the objection of no cause of action and set the matter for hearing; however, the trial court denied the exception.

MADCON to perform work on the Project and breached the retainer agreement not to accept alternative employment, MADCON alleged it was entitled to the return of the $3,000.00 retainer payment. After Mr. Medwick answered MADCON's reconventional demand, MADCON filed a motion for judgment on the pleadings, which was denied by the trial court.

A bench trial was held on December 4, 2020, during which time documentary evidence was introduced and testimony presented, and the trial court took the matter under advisement. On January 19, 2021, the trial court issued its reasons for judgment, finding that the "employment contract agreed to herein was for a definite term of ninety days as provided in the contract." The trial court further found that plaintiffs detrimentally relied on the term contract and were harmed by the "unkept promise of employment" by MADCON, notwithstanding the fact that plaintiffs "mitigated their losses by eventually taking other employment." As a result of the contract and detrimental reliance, the trial court awarded each plaintiff his 90-day contract rate: $40,050.00 for Mr. Medwick; $30,150.00 for Mr. Perry; and $33,300.00 for Mr. Peluso. The trial court further awarded a credit to MADCON for any advances or retainers paid.

The final judgment was reduced to writing and signed by the trial court on February 11, 2021, in favor of plaintiffs and against MADCON, awarding $37,050.00 to Mr. Medwick, which award included a credit for the $3,000.00 retained Mr. Medwick received, $30,150.00 to Mr. Perry, and $33,300.00 to Mr. Peluso. After the trial court denied its motion for new trial, MADCON sought a suspensive appeal from the February 11, 2021 judgment. MADCON assigns the following as errors of the trial court: (1) finding that the offer letters specified a definite term of 90 days; (2) concluding that plaintiffs justifiably relied on MADCON's offer letters to their detriment; (3) determining that plaintiffs were

6

harmed by their reliance on MADCON's offer letters; and (4) awarding the 90-day contract rate despite plaintiffs mitigating their damages by taking other employment.

## LAW AND DISCUSSION

### At-Will and Limited Term Employment Contracts

The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. **Quebedeaux v. Dow Chemical Co.**, 2001-2297 (La. 6/21/02), 820 So.2d 542, 545. Louisiana law provides that employment contracts are either limited term or terminable at will. **Read v. Willwoods Community**, 2014-1475 (La. 3/17/15), 165 So.3d 883, 887. Under a limited term contract the parties agree to be bound for a certain period during which the employee is not free to depart without assigning cause nor is the employer at liberty to dismiss the employee without cause. See La. Civ. Code art. 2746; **Read**, 165 So.3d at 887. When a contract does not provide for a limited term, an employer can dismiss the employee at any time and for any reason without incurring liability. See La. Civ. Code art. 2747; **Read**, 165 So.3d at 887.

When the employer and employee are silent on the terms of the employment contract, the Civil Code provides the default rule of employment-at-will. **Read**, 165 So.3d at 887. This default rule is codified in La. Civ. Code art. 2747, which has been in the Civil Code since 1808, and provides that "[a] man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause." See **Hayes v. Univ. Health Shreveport, LLC**, 2021-01601 (La. 1/7/22), 332 So.3d 1163, 1169.

A contract is formed by the consent of the parties established through offer and acceptance. La. Civ. Code art. 1927. Thus, an enforceable contract requires a meeting of the minds. Because there is a presumption that employment is at will, the parties seeking damages under an alleged contract of employment for a limited

7

term bear the burden of proving there was a meeting of the minds on the term of employment. See **Read**, 165 So.3d at 887.

The existence or non-existence of a contract is a question of fact, and the trial court's determination of this issue will not be disturbed unless manifestly erroneous or clearly wrong. When evaluating the evidence needed to establish the existence or non-existence of a contract, the trier of fact is allowed to make credibility determinations. The standard of review we must apply to a trial court's findings of fact is well settled. A reviewing court may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong."[4] **Read**, 165 So.3d at 888.

Contracts have the effect of law between the parties. La. Civ. Code art. 1983. The judiciary's responsibility when interpreting a contract is to determine the common intent of the parties. See La. Civ. Code art. 2045; **Amer v. Roberts**, 2015-0599 (La. App. 1st Cir. 11/9/15), 184 So.3d 123, 131. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. **Hampton v. Hampton, Inc.**, 97-1779 (La. App. 1st Cir. 6/29/98), 713 So.2d 1185, 1189.

When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. Civ. Code art. 2046. A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on the issue, its written terms are

---

[4] In order to reverse a trial court's determination of a fact, a reviewing court must review the record in its entirety, find a reasonable factual basis does not exist for the finding, and then further determine the record establishes the factfinder is clearly wrong or manifestly erroneous. An appellate court must determine whether the trial court's conclusions were clearly wrong based on the evidence or clearly without evidentiary support. Nevertheless, the issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether the factfinder's conclusion was a reasonable one. **Hanks v. Entergy Corporation**, 2006-477 (La. 12/18/06), 944 So.2d 564, 580.

The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. If a court finds that the trial court committed a reversible error of law or manifest error of fact, the court of appeal must ascertain the facts *de novo* from the record and render a judgment on the merits. **Oubre v. Eslaih**, 2003-1133 (La. 2/6/04), 869 So.2d 71, 76-77.

susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used. **Carr & Associates, Inc. v. Jones**, 2019-0550 (La. App. 1st Cir. 12/27/19), 292 So.3d 577, 584. Moreover, a doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. Civ. Code art. 2053. See **Rathe v. Rathe**, 2017-1326 (La. App. 1st Cir. 8/21/18), 256 So.3d 1001, 1008.

Whether a contract is ambiguous or not is a question of law and subject to the *de novo* standard of review on appeal. **Carr & Associates, Inc.**, 292 So.3d at 584. Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. **Rathe**, 256 So.3d at 1008.

In connection with MADCON's first assignment of error, we must determine whether the trial court erred in finding that the "employment contract agreed to herein was for a definite term of ninety days as provided in the contract." In so finding, the trial court implicitly determined that a contract existed between each of the plaintiffs and MADCON. See **Read**, 165 So.3d at 888-89. We find no error in this finding and reiterate that there is no dispute that MADCON's offer letters were accepted by each of the plaintiffs.

However, pursuant to our *de novo* review, we find that the contract was ambiguous as to the term of employment. See **Carr & Associates, Inc.**, 292 So.3d at 584. While the offer letters sent by MADCON all reference "90 days" and "90

working days,"[5] a mere reference to a term does not indicate the parties' intent to enter into a limited term employment contract. For a mandatory term employment contract to exist, the parties must have clearly agreed to be bound for a certain period of time during which the employee is not free to depart without assigning cause and the employer is not free to depart without giving a reason. **Amer**, 184 So.3d at 132 (citing **Read**, 165 So.3d at 889).

In fact, the offer letters provide no indication as to whether the parties agreed to be bound for a certain period during which plaintiffs were not free to depart without assigning cause and during which time MADCON could not dismiss plaintiffs without cause. See La. Civ. Code art. 2746; **Read**, 165 So.3d at 887. When a contract does not provide for a limited term, the employer can dismiss the employee at any time and for any reason without incurring liability for the discharge. La. Civ. Code art. 2747; **Quebedeaux**, 820 So.2d at 545.

Nevertheless, the intent of the parties can be inferred from all the surrounding circumstances. **Hampton**, 713 So.2d at 1189. However, there was no testimony or evidence presented to establish that the parties' common intent was to each be bound for a period of 90 days. See La. Civ. Code art. 2045. Also see **Read**, 165 So.3d at 887 (the party seeking damages under an alleged contract of employment for a limited term bears the burden of proving there was a meeting of the minds). To the

---

[5] Specifically, the offer letters included a total of five references to "90 days" and "90 working days":

> MADCON's goal is completing the project within **90 days**.
> ...
> Your compensation will also include a bonus ... if the project is completed within **90 working days**.
> If the project is completed in less than **90 days**, then you will still receive your full **90 days** of pay at the day rate above, plus you will receive the bonus listed above.
> ...
> IF THE PROJECT EXTENDS PAST THE PROJECTED **90 DAYS**, INCENTIVE BONUS IS ADJUSTED AS LISTED BELOW.

(Emphasis in bold added.)

contrary, all plaintiffs testified that nothing prevented them from quitting the Project, and Mr. Medwick and Mr. Peluso testified that nothing prevented MADCON from firing them.[6] Mr. Curl also testified that MADCON did not believe that it could force an employee to go on the Project or that the employee was obligated to complete the Project.

Based on our review of the entire record, we are compelled to conclude that the record does not contain sufficient evidence upon which the trial court could reasonably find that the contracts between MADCON and plaintiffs were for limited term employment or that MADCON and plaintiffs had a meeting of the minds regarding a 90-day term employment contract. Accordingly, the trial court's finding that the "employment contract agreed to herein was for a definite term of ninety days as provided in the contract" was clearly wrong based on the evidence. See **Hanks v. Entergy Corporation**, 2006-477 (La. 12/18/06), 944 So.2d 564, 580 (In order to reverse a district court's determination of a fact, a reviewing court must review the record in its entirety and find a reasonable factual basis does not exist for the finding, and further determine the record establishes the factfinder is clearly wrong or manifestly erroneous.). Accordingly, we find merit in MADCON's first assignment of error.

## Detrimental Reliance

In view of our determination that the contracts at issue were not for limited term employment, the default rule of employment-at-will applies to the relationship between plaintiffs and MADCON. See **Read**, 165 So.3d at 887. We must next determine, pursuant to our *de novo* review, whether plaintiffs detrimentally relied on the contracts with MADCON. See **Ferrell v. Fireman's Fund Insurance Co.**, 94-1252 (La. 2/20/95), 650 So.2d 742, 747 ("Where one or more trial court legal errors

---

[6] Mr. Perry was not asked whether anything prevented MADCON from firing him.

interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence.").

The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. **Suire v. Lafayette City-Parish Consolidated Government**, 2004-1459, 2004-1460, 2004-1466 (La. 4/12/05), 907 So.2d 37, 59. The theory of detrimental reliance, which is also referred to as promissory or equitable estoppel, is codified as La. Civ. Code art. 1967, which provides as follows:

> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

To establish detrimental reliance, a party must prove the following by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. **Suire**, 907 So.2d at 59. However, estoppel is not favored in our law, and a party cannot avail himself of that doctrine if he fails to prove all essential elements of the plea. **Luther v. IOM Co. LLC**, 2013-0353 (La. 10/15/13), 130 So.3d 817, 825. Moreover, all estoppel claims must be examined carefully and strictly. **May v. Harris Management Corp.**, 2004-2657 (La. App. 1st Cir. 12/22/05), 928 So.2d 140, 145.

In **May**, the plaintiff sought damages for detrimental reliance against the defendant after the defendant withdrew an offer of at-will employment. **May**, 928 So.2d at 143. In reviewing the trial court's grant of summary judgment in favor of the defendant, this court evaluated each of the elements of detrimental reliance and

concluded that the first element was easily met, as it was undisputed that the defendant made an oral offer of at-will employment and the plaintiff accepted. The court also acknowledged that the plaintiff relied on the offer, voluntarily resigning from her previous position and completing employment documents for the new position. **Id**. at 145. However, this court held, "it is unreasonable as a matter of law to rely on an offer of at-will employment, just as it is patently unreasonable for an employee to rely on an offer of at-will employment." **Id**. at 148.

Similarly, the first element, that there be a representation by conduct or word, is easily met here, as MADCON made offers of employment to each plaintiff and the offers were accepted. We also acknowledge that plaintiffs relied on MADCON's offers of employment with a guarantee of receiving 90-days of their day rate for working on the Project.[7]

Mr. Peluso testified that "to get a job to pay 90 guarantee days in Africa of all places ... [i]t was just great." He made himself fully available to MADCON after receiving his offer in April, waiting for the call while standing by at home in Washington state. After the April meeting, Mr. Curl offered him a couple of days of work for MADCON on other jobs. However, Mr. Peluso declined, wanting to spend time with his family before departing to Africa for three months. Mr. Peluso also testified that he passed up work with three other companies while waiting to be called out on the Project, relying on Mr. Trader's word, which caused him to lose out on money.

Mr. Perry was excited to receive the offer and viewed it as a "really good opportunity to make really good money for the year and add something to [his] resume." He also understood that no matter how long the Project lasted, he would

---

[7] Mr. Trader indicated that their goal in staffing the Project was to make sure that MADCON had people that would follow through and go to the Project and stay for the duration because of logistics, and Mr. Curl testified likewise.

13

be paid for 90 days. Around the time of the April meeting, Mr. Perry was performing some shop work for MADCON because there had been no work after he was first contacted in January. Mr. Perry eventually passed up two different job opportunities in February and March while waiting to be called out on the Project, one of which would have paid $17.00 to 19.00 per hour and would have allowed him to work twelve hours per day for almost thirty days.

Mr. Medwick testified that the MADCON job, which was described as a "3-month, 90-day term worth of work," was "going to make [his] year" and that the year would have been one of his best years in his almost twenty years of offshore work. While Mr. Medwick testified that after receiving his offer, he "sat, waited, [and] twiddled [his] thumbs," he also testified that if a small enough job came up, one that would not conflict with the Project, he could have taken it. However, he stated that he never took other jobs because they would have conflicted with the schedule for the Project he was being told, *i.e.*, two weeks. After the April meeting, Mr. Medwick was called by MADCON to perform other work for the company on other jobs, which he did.

Notwithstanding plaintiffs' reliance on these offers, in order to establish their claim of detrimental reliance, the reliance must be reasonable. La. Civ. Code art. 1967. As this court previously held in **May**, it is deemed to be patently unreasonable as a matter of law for an employee to rely on an offer of at-will employment. **May**, 928 So.2d at 148. Also see **Onovwerosuoke v. Dillard University**, 2008-0447 (La. App. 4th Cir. 1/14/09), 2009 WL 8684635, *2 (unpublished) (reliance on the plaintiff's employment at will was not justifiable or reasonable reliance). Moreover, the nature of the at-will employment offered by MADCON meant that the plaintiffs were free to depart from MADCON without cause and that MADCON could dismiss the plaintiffs at any time and for any reason without incurring liability for the discharge. See La. Civ. Code art. 2747.

14

Pursuant to our careful and strict examination, we find as matter of law that plaintiffs were unable to carry their burden of establishing that they detrimentally relied on the at-will employment contracts with MADCON. **May,** 928 So.2d at 145. Therefore, we find merit to MADCON's second assignment of error.[8]

<u>MADCON's Claims against Mr. Medwick</u>

In finding merit in MADCON's first and second assignments of error, we further find that the trial court's legal errors interdicted the fact-finding process in the trial court's award of a credit to MADCON "for any advances or retainers paid" to the plaintiffs, *i.e.*, the $3,000.00 paid by MADCON in April 2019 to Mr. Medwick. <u>See</u> **Ferrell,** 650 So.2d at 747. Pursuant to our own independent, *de novo* review of the complete record, we determine that the preponderance of the evidence did not establish that there was an agreement between MADCON and Mr. Medwick for Mr. Medwick to refrain from accepting alternative employment in exchange for $3,000.00. <u>See</u> **Read,** 165 So.3d at 887 ("[A]n enforceable contract requires a meeting of the minds."). As the party claiming the existence of the agreement, MADCON bore the burden of proving the agreement. <u>See</u> **Estate of Mayeaux v. Glover,** 2008-2031 (La. App. 1st Cir. 1/12/10), 31 So.3d 1090, 1095, <u>writ denied</u>, 2010-0312 (La. 4/16/10), 31 So.3d 1069. At best, the testimony reflected that MADCON agreed to pay Mr. Medwick $3,000.00 for the time Mr. Medwick had refrained from other employment up to the time of such payment. Accordingly, we dismiss MADCON's claims against Mr. Medwick concerning the $3,000.00 payment raised in the reconventional demand.

**CONCLUSION**

In light of the foregoing, the trial court's February 11, 2021 judgment is vacated and judgment is hereby rendered in favor of defendant, MADCON

---

[8] We pretermit discussion of MADCON's remaining assignments of error in light of our findings herein.

Corporation, dismissing with prejudice all claims of plaintiffs, Stephen Medwick, Maxwell Perry, and Scott Peluso, asserted in the main demand. Judgment is further rendered in favor of defendant-in-reconvention, Stephen Medwick, dismissing with prejudice all claims asserted by MADCON Corporation in the reconventional demand. All costs of this appeal are assessed one-third to Stephen Medwick, one-third to Maxwell Perry, and one-third to Scott Peluso.

**REVERSED AND RENDERED.**