# Supreme Court of Florida

_____

No. SC17-127
_____

**KENNETH DARCELL QUINCE,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[April 12, 2018]
**REVISED OPINION**

PER CURIAM.

Kenneth Darcell Quince, a prisoner under sentence of death, appeals the trial

court's order summarily denying his renewed motion for a determination of

intellectual disability as a bar to execution, which was filed under Florida Rule of

Criminal Procedure 3.203 and section 921.137, Florida Statutes (2015). We have

jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons we explain, we

affirm the denial of relief.

## I. BACKGROUND

In 1980, Quince pleaded guilty to first-degree felony murder and burglary of

a dwelling and, after waiving his right to a penalty phase jury, was sentenced to

death. We affirmed Quince's death sentence on direct appeal. *Quince v. State*, 414 So. 2d 185, 189 (Fla. 1982). Quince filed an initial motion for postconviction relief, the denial of which was eventually affirmed on appeal. *See Quince v. State*, 732 So. 2d 1059 (Fla. 1999); *Quince v. State*, 592 So. 2d 669 (Fla. 1992); *Quince v. State*, 477 So. 2d 535 (Fla. 1985). In 2004, Quince filed a successive motion for postconviction relief under Florida Rules of Criminal Procedure 3.851 and 3.203, in which he sought to vacate his death sentence on the ground that he is intellectually disabled and therefore ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002), and section 921.137, Florida Statutes (2003).[1] In 2008, an evidentiary hearing was held, at which the trial court heard evidence regarding all three prongs of the intellectual disability standard and thereafter denied the motion based solely on Quince's failure to meet the significantly subaverage general intellectual functioning prong. The denial of relief was affirmed on appeal. *Quince v. State*, No. SC11-2401, 2012 WL 6197458, at *1-2 (Fla. Dec. 10, 2012) (116 So. 3d 1262 (table)), *cert. denied*, 134 S. Ct. 2695 (2014).

---

1. Section 921.137 requires a defendant to establish his or her intellectual disability by demonstrating the following three factors: (1) significantly subaverage general intellectual functioning; (2) concurrent deficits in adaptive behavior; and (3) manifestation of the condition before age eighteen. § 921.137(1), Fla. Stat. The defendant has the burden to prove that he or she is intellectually disabled by clear and convincing evidence. § 921.137(4), Fla. Stat.

In 2014, the United States Supreme Court issued its decision in *Hall v. Florida*, 134 S. Ct. 1986, 1990 (2014), in which it held that Florida's interpretation of its statute prohibiting the imposition of the death sentence upon an intellectually disabled defendant as establishing a strict IQ test score cutoff of 70 "creates an unacceptable risk that persons with intellectual disability will be executed, and thus is unconstitutional." Instead of applying the strict cutoff when assessing the subaverage intellectual functioning prong of the intellectual disability standard, courts must now take into account the standard error of measurement (SEM) of IQ tests. *See Hall*, 134 S. Ct. at 2001. And "when a defendant's IQ test score falls within the test's acknowledged and inherent margin of error, the defendant must be able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits." *Id.*

In the wake of *Hall*, Quince filed a renewed motion for a determination of intellectual disability as a bar to execution in 2015. Quince did not request another evidentiary hearing or seek to present any new evidence of his alleged intellectual disability but simply asked the trial court to review the record from the 2008 intellectual disability hearing in light of *Hall*. Quince also argued that although the current state of the law requires a defendant to prove his or her intellectual disability by clear and convincing evidence, the trial court should allow Quince to prove his intellectual disability by a preponderance of the evidence because, he

alleged, "the 'clear and convincing evidence' requirement runs afoul of *Atkins* and the Eighth and Fourteenth Amendments to the Constitution of the United States."

At the hearing held on Quince's renewed motion, the trial court acknowledged that although it had heard evidence regarding all three prongs of the intellectual disability standard at Quince's 2008 hearing, it denied Quince's initial intellectual disability claim based solely on his failure to demonstrate that he meets the significantly subaverage general intellectual functioning prong. The trial court agreed with Quince that *Hall* should be applied retroactively to his case but disagreed that Quince should be allowed to prove his intellectual disability by a preponderance of the evidence instead of clear and convincing evidence. The trial court stated that it would review the record and evidence from Quince's 2008 intellectual disability hearing and reconsider his intellectual disability claim in light of *Hall*. After reviewing the record and considering written memoranda from both parties, the trial court concluded that Quince failed to prove that he is intellectually disabled because none of the three IQ scores he had presented—79, 77, and 79—fell within the SEM and Quince "was not precluded from presenting additional evidence of intellectual disability, including testimony regarding adaptive deficits." This appeal follows.

## II. ANALYSIS

Quince contends that the trial court erred in failing to find that he meets the first prong of the intellectual disability standard—significantly subaverage general intellectual functioning—because it did not adjust his IQ scores to account for the Flynn effect.[2] According to Quince, because *Hall* requires courts assessing IQ to allow professional standards to inform their decisions, the trial court was required to apply the Flynn effect to adjust his IQ scores down. Although the only IQ scores Quince has presented are a 79 (obtained using the WAIS in 1980), a 77 (obtained using the WAIS-R in 1984), and a 79 (obtained using the WAIS-III in 2006), he claims that when the Flynn effect is applied and the SEM is taken into account as required by *Hall*, his 1980 IQ score of 79 becomes a range from 65-75, his 1984 IQ score of 77 becomes a range of 70-80, and his 2006 IQ score of 79 becomes a range of 71-81. He asserts that all of these "ranges contain a score on which a finding of significantly subaverage general intellectual functioning is warranted."

At the evidentiary hearing on Quince's initial intellectual disability claim in 2008, Dr. Oakland, a psychologist, testified that he relied on the Flynn effect to adjust Quince's 1980 IQ score from a 79 to a 70. But Dr. Oakland admitted that

---

2. The Flynn effect refers to a theory in which the intelligence of a population increases over time, thereby potentially inflating performance on IQ examinations. The accepted increase in scoring is approximately three points per decade or 0.33 points per year.

there is no scientific way to determine whether or not the Flynn effect is operating on a particular person's intelligence score and that he could only say that it was "within the realm of probability" that the Flynn effect impacted Quince's 1980 IQ score. Dr. Oakland did not dispute the accuracy of Quince's unadjusted 1984 IQ score of 77 or his unadjusted 2006 IQ score of 79 and did not testify that those scores should be adjusted for the Flynn effect. At the same 2008 hearing, another psychologist, Dr. McClaren, testified that because Quince's IQ scores remained virtually the same across time and are "tightly clustered near the upper bounds of the borderline level of intellect," the Flynn effect had no impact on them. Dr. McClaren testified that the Flynn effect does not apply on an individual basis, that it is not general clinical practice to subtract the "Flynn number" from an attained IQ score, and that the most recent publication from the American Association on Mental Retardation (which has since been renamed the American Association of Intellectual and Developmental Disabilities (AAIDD)) at the time did not advise doing so. Dr. McClaren also testified that it would not only be inappropriate but would make no sense to simply add the Flynn number and the SEM together and subtract them from an IQ score because they are not totally independent of one another. After the hearing, the trial court declined to apply the Flynn effect to adjust Quince's IQ scores and concluded that Quince did not establish that he suffers from significantly subaverage general intellectual functioning.

We previously considered and rejected Quince's argument that the trial court erred in failing to apply the Flynn effect to his IQ scores when Quince appealed the denial of his initial intellectual disability claim. *See Quince*, 116 So. 3d 1262 (table); Initial Brief of the Appellant at 50, *Quince v. State*, 116 So. 3d 1262 (Fla. 2012) (table) (No. SC11-2401). Quince again argues that the trial court erred in failing to adjust his scores for the Flynn effect when considering his renewed intellectual disability claim. Quince now relies on a 2015 publication of the AAIDD, *The Death Penalty and Intellectual Disability* (Edward A. Polloway, ed. 2015) (DPID), which states that there is "a consensus that individually obtained IQ test scores derived from tests with outdated norms must be adjusted to account for the Flynn Effect, particularly in *Atkins* cases." Quince argues that under "*Hall*, courts assessing ID must allow professional standards to inform their decisions" and that "[i]t is clear that both the professional community and the legal community recommend adjusting for the Flynn Effect in the context of *Atkins* cases." He asserts that if both the Flynn effect and the SEM are applied to his IQ scores as he claims *Hall* requires, he will have established that he meets the significantly subaverage intellectual functioning prong of the intellectual disability standard.

As many courts have already recognized, *Hall* does not mention the Flynn effect and does not require its application to all IQ scores in *Atkins* cases. *E.g.*,

*Black v. Carpenter*, 866 F.3d 734, 746 (6th Cir. 2017) (noting that *Hall* does not even mention the Flynn effect and does not require that IQ scores be adjusted for it), *petition for cert. filed*, No. 17-8275 (U.S. Mar. 26, 2018); *Smith v. Duckworth*, 824 F.3d 1233, 1246 (10th Cir. 2016) ("*Hall* says nothing about application of the Flynn Effect to IQ scores in evaluating a defendant's intellectual disability."), *cert. denied*, 137 S. Ct. 1333 (2017); *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 639 (11th Cir. 2016) ("*Hall* did not mention the Flynn effect. . . . There is no 'established medical practice' of reducing IQ scores pursuant to the Flynn effect. The Flynn effect remains disputed by medical experts, which renders the rationale of *Hall* wholly inapposite."), *cert. denied*, 137 S. Ct. 1432 (2017). Although the AAIDD's DPID publication may now advocate the adjustment of all IQ scores in *Atkins* cases that were derived from tests with outdated norms to account for the Flynn effect, "*Hall* indicated that being informed by the medical community does not demand adherence to everything stated in the latest medical guide." *Moore v. Texas*, 137 S. Ct. 1039, 1049 (2017). Because Quince has not demonstrated that *Hall* requires that his IQ scores be adjusted for the Flynn effect, and there is competent, substantial evidence in the record to support the trial court's decision not to apply the Flynn effect to adjust Quince's IQ scores, Quince is not entitled to relief on this claim.

Next, Quince claims that the trial court erred in failing to consider all three prongs of the intellectual disability standard in tandem before denying his renewed intellectual disability claim. At the 2016 hearing on Quince's renewed intellectual disability motion, the trial court acknowledged that it denied Quince's initial intellectual disability claim under the applicable law at the time based exclusively on its finding that Quince failed to meet the significantly subaverage intellectual functioning prong of the intellectual disability standard, but the trial court announced that it would apply *Hall* retroactively to Quince's case, review the record of the 2008 intellectual disability hearing, and reconsider all of the evidence presented in light of *Hall*. After reviewing the record and considering written memoranda from both parties, the trial court concluded that because "none of [Quince's IQ] scores are within the tests' acknowledged and inherent margin of error, and the defendant was not precluded from presenting additional evidence of intellectual disability, including testimony regarding adaptive deficits," Quince is not entitled to relief under *Hall*. We agree that Quince is not entitled to relief on this basis.

In response to a specific question asked by Quince at the 2016 hearing about the extent of the court's review of his renewed intellectual disability claim, the trial court said that it would review the record from the 2008 evidentiary hearing, re-evaluate the evidence regarding the second and third prongs, and reconsider all of

the evidence in light of *Hall*. The trial court's order denying his renewed intellectual disability claim did not make any specific factual findings as to whether Quince had established that he meets either the second or third prongs of the intellectual disability standard, but under the circumstances presented, such specific findings were unnecessary. Although *Hall* requires courts to consider all three prongs of intellectual disability in tandem, we have recently reiterated that "[i]f the defendant fails to prove any one of these components, the defendant will not be found to be intellectually disabled." *Salazar v. State*, 188 So. 3d 799, 812 (Fla. 2016); *accord Williams v. State*, 226 So. 3d 758, 773 (Fla. 2017), *petition for cert. filed*, No. 17-7924 (U.S. Feb. 26, 2018); *Snelgrove v. State*, 217 So. 3d 992, 1002 (Fla. 2017). And while *Hall* requires a holistic hearing, "defendants must still be able to meet the first prong of [the intellectual disability standard]." *Zack v. State*, 228 So. 3d 41, 47 (Fla. 2017), *petition for cert. filed*, No. 17-8134 (U.S. Mar. 12, 2018). Thus, because Quince failed to meet the significantly subaverage intellectual functioning prong (even when the SEM is taken into account), he could not have met his burden to demonstrate that he is intellectually disabled.

Finally, Quince argues that section 921.137(4), Florida Statutes, which requires that defendants prove their intellectual disability by clear and convincing evidence, is unconstitutional under *Atkins* and the Eighth and Fourteenth Amendments to the United States Constitution, and that he should have been

permitted to prove his intellectual disability claim by the more lenient preponderance of the evidence standard instead. Because we conclude that Quince's intellectual disability claim would have failed even under the preponderance of the evidence standard, we need not address the constitutionality of the clear and convincing evidence standard of section 921.137(4), Florida Statutes. *See Singletary v. State*, 322 So. 2d 551, 552 (Fla. 1975) ("[C]ourts should not pass upon the constitutionality of statutes if the case in which the question arises may be effectively disposed of on other grounds.").

## III. CONCLUSION

For these reasons, we affirm the trial court's order denying Quince's renewed motion for a determination of intellectual disability as a bar to execution.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and LAWSON, JJ., concur.
QUINCE, J., dissents.

NO MOTION FOR REHEARING WILL BE ALLOWED.

An Appeal from the Circuit Court in and for Volusia County,
	Joseph G. Will, Judge - Case No. 642017CF101850XXXADL

James Vincent Viggiano, Jr., Capital Collateral Regional Counsel, Raheela Ahmed, Maria Christine Perinetti, Lisa Marie Bort, and Reuben Andrew Neff, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

	for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Doris Meacham, Assistant Attorney General, Daytona Beach, Florida,

 for Appellee