STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CA 0407

DEAN WINNFIELD

VERSUS

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA AND
RXO CAPACITY SOLUTIONS, LLC (IMPROPERLY NAMED)

*Judgment Rendered:* **NOV 07 2025**

********

Appealed from the Office of Workers' Compensation, District 5
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. 21-05961
Honorable Jason Ourso, Judge Presiding

********

Brian D. Calvit
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellant
Dean Winnfield

Eric E. Pope
Megan C. Gladner
Metairie, Louisiana

Counsel for Defendants/Appellees
Indemnity Insurance Company
of North America and RXO
Capacity Solutions, LLC

********

BEFORE: LANIER, WOLFE AND HESTER, JJ.

**LANIER, J.**

Plaintiff, Dean Winfield,[1] appeals the summary judgment rendered by the Office of Workers' Compensation, District 5 (OWC) in favor of the defendants, Indemnity Insurance Company of North America (Indemnity) and 28277 RXO Capacity Solutions, LLC (RXO), and dismissing Mr. Winfield's claims against them with prejudice. The defendants have also filed an answer to Mr. Winfield's appeal. For the following reasons, we affirm the judgment of the OWC, and dismiss the answer to the appeal.

## FACTS AND PROCEDURAL HISTORY

On November 2, 2021, Mr. Winfield filed a disputed claim for compensation against his employer RXO, which at the time was named XPO Logistics Freight Inc.[2] (XPO), and Indemnity. Mr. Winfield claimed his jaw and neck were injured on December 18, 2020, while in the course and scope of his employment with RXO. He alleged that while he was hooking up a trailer, the crank to the trailer's landing gear kicked back and struck him, fracturing his chin and jaw, and injuring his neck as well. Mr. Winfield claimed that following the injury, the defendants had not paid him any wage benefits, nor had they authorized any medical treatment.

In their answer, the defendants denied that Mr. Winfield had reported an injury to them, and also denied that he was employed by RXO at the time of the injury. The defendants acknowledged that compensation benefits had not been paid to Mr. Winfield. The defendants filed a motion for summary judgment on July 28, 2022, again claiming that Mr. Winfield was not an employee of RXO at the time of the accident, but instead was an independent contractor/owner-operator.

---

[1] The plaintiff writes and spells his name as "Winfield."

[2] For simplicity, this defendant will be referred to as RXO throughout the opinion.

2

In their supporting memorandum, the defendants stated that Mr. Winfield was the owner-operator of his own truck, and that on June 6, 2017, he had entered into a lease agreement with M&P Trucking LLC (M&P) to transport cargo. The defendants claimed that M&P was responsible for issuing paychecks to Mr. Winfield, although he primarily transported cargo for RXO between 2018 and 2020.

The defendants further claimed that Mr. Winfield reported his injury to M&P, who informed him that he was not covered by workers' compensation. M&P had Mr. Winfield complete an occupational accident form for Midlands Insurance (Midlands), with M&P named as his sponsor. The defendants alleged that they were never made aware of Mr. Winfield's injury until they were served with his disputed claim for compensation.

In his memorandum in opposition, Mr. Winfield stated that RXO's dispatcher directed him to the Purina Mills Plant in Roseland, Louisiana, where the accident occurred. He further stated that on June 6, 2017, he entered into a written agreement with M&P and its owner, Moses Weary, to transport cargo under M&P's authority. M&P was subsequently sold by Mr. Weary, who stayed on as M&P's dispatcher. The written agreement between Mr. Winfield and M&P terminated in 2018, at which time he began transporting cargo exclusively for RXO. RXO would not pay Mr. Winfield directly, but would issue payment to M&P, who then paid Mr. Winfield. Mr. Winfield argued that he was never identified by RXO as an independent contractor, that RXO controlled the time, order, and location of all deliveries, that his contract with M&P became inoperative once he began transporting cargo exclusively for RXO, and that his routine duties with RXO did meet the "manual labor" exception.

On November 1, 2022, the OWC signed a judgment denying the defendants' motion for summary judgment.[3] On June 27, 2023, Mr. Winfield filed a first supplemental and amended petition, naming RXO as a defendant in place of XPO. On June 27, 2024, the defendants filed another motion for summary judgment with the same allegations that were made in the previous motion for summary judgment. In their supporting memorandum, the defendants stated that at the time of the accident, Mr. Winfield had executed an agreement where he had requested coverage under the Independent Contractor Program and verified he was an independent contractor for M&P. The defendants further claimed that Mr. Winfield received income replacement and medical benefits through this agreement.

In his opposition memorandum, Mr. Winfield stated that on February 2, 2018, he executed a motor carrier transportation agreement with M&P and RXO. Mr. Weary signed the agreement as the "owner" of M&P, although he was no longer the owner of M&P at that time. Mr. Winfield stated that once he began transporting cargo exclusively for RXO, Mr. Weary was not RXO's dispatcher, all instructions as to loading and unloading came from RXO's own dispatcher, and that RXO would pay him through M&P.

On September 3, 2024, the OWC signed a judgment granting "the Defendant's Motion for Summary Judgment" for reasons expressed in open court. Mr. Winfield filed a devolutive appeal of that judgment. The defendants filed an answer to the appeal, in which they sought attorney fees and costs related to their defense of the instant appeal. On June 5, 2025, this court issued a rule to show cause order, due to the September 3, 2024 judgment appearing to lack appropriate decretal language for failing to name specific parties to whom the ruling was in

---

[3] Reasons for the denial are not given in the record.

favor or against, and for failing to identify any relief that was awarded. See La. C.C.P. art. 1918(A).

Through an interim order issued August 21, 2025, this court remanded the instant matter for the limited purpose of inviting the OWC to issue an amended judgment that corrected the aforementioned deficiencies of the September 3, 2024 judgment. On September 15, 2025, the OWC supplemented the record with an amended judgment, signed August 20, 2025, in which the OWC granted summary judgment in favor of both the defendants, RXO and Indemnity, and against Mr. Winfield, finding that he was an independent contractor and not an employee of RXO, and dismissing his disputed claim for compensation against both defendants with prejudice.

We find that this amended judgment meets the requirements of La. C.C.P. arts. 1841, 1918(A), and 1951, and therefore we maintain the appeal. See *D'Luca v. Kirkland,* 2020-0713, 0714 (La. App. 1 Cir. 2/19/21), 321 So.3d 411, 413-14; *Rathe v. Rathe,* 2017-1326 (La. App. 1 Cir. 8/21/18), 256 So.3d 1001, 1010; *Marrero v. I. Manheim Auctions, Inc.,* 2019-0365 (La. App. 1 Cir. 11/19/19), 291 So.3d 236, 239.

## ASSIGNMENTS OF ERROR

Mr. Winfield cites three assignments of error:

1. The OWC committed manifest error and the decision was clearly wrong in ruling that Mr. Winfield was an independent contractor; therefore, the defendants were not entitled to summary judgment as a matter of law.

2. The OWC committed manifest error by failing to address the issue as to whether a substantial part of Mr. Winfield's work time was spent in manual labor.

3. The OWC committed manifest error by failing to address the issue as to whether RXO controlled the time, order and location of deliveries made by Mr. Winfield.

5

**STANDARD OF REVIEW**

Ordinarily, findings of fact and the determination of whether a claimant has satisfied his burden of proof in a workers' compensation case is considered on appeal under the manifest error standard of review; however, because these issues have been raised in a summary judgment proceeding, we must review *de novo* the ruling of the OWC, using the same criteria applied by the OWC. See *Carral v. Winn-Dixie Louisiana, Inc.*, 2005-1482 (La. App. 1 Cir. 6/9/06), 938 So.2d 799, 801. Accordingly, an appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Walton v. Guidry*, 2017-0784 (La. App. 1 Cir. 1/4/18), 241 So.3d 485, 488.

**DISCUSSION**

The distinction between employee and independent contractor status is a factual determination to be examined on a case-by-case basis. The OWC may consider whether: 1) there is a valid contract between the parties; 2) the work is independent in nature so the contractor may accomplish it through non-exclusive means; 3) the contract calls for specific piecework so that the contractor may use his own methods without supervision by or direct control from the principal; 4) there is a specific price for the overall undertaking; and 5) the duration of work is for a specific time. *Mullen v. R.A.M. Enterprises*, 2002-1157 (La. App. 1 Cir. 3/28/03), 844 So.2d 376, 378.

Ordinarily, independent contractors are excluded from workers' compensation benefits under the Louisiana Workers' Compensation Law. *McBride v. Old Republic Insurance Company*, 2024-01519 (La. 6/27/25), 413

6

So.3d 452, 463. However, La. R.S. 23:1021 creates an exception to this rule. It provides in subpart (7) as follows:

> "Independent contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter *unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.* The operation of a truck tractor or truck trailer tractor, including fueling, driving, connecting and disconnecting electrical lines and air hoses, hooking and unhooking trailers, and vehicle inspections are not manual labor within the meaning of this Chapter.

(Emphasis added).

As expressly provided by this statute, an independent contractor who is engaged primarily in manual labor has a claim only for workers' compensation against his principal. See *McBride*, 413 So.3d at 464. The jurisprudence has uniformly defined "manual" labor as work where the "physical" element predominated over the "mental" element. *Riles v. Truitt Jones Const.*, 94-1224 (La. 1/17/95), 648 So.2d 1296, 1300. Whether an individual's job involves manual labor is to be considered from the particular facts and circumstances of each case. *Coleman v. Landstar Ranger*, 2003-1943 (La. App. 1 Cir. 6/25/04), 886 So.2d 472, 473, citing *Mullen*, 844 So.2d at 379. The physical act of driving a truck is not, in itself, manual labor as defined by law. *Coleman*, 886 So.2d at 473.

In support of its motion for summary judgment, RXO filed into evidence the transcript of Mr. Winfield's deposition, the transcript of Mr. Weary's deposition, and the Midlands insurance policy held by M&P. Attached to Mr. Winfield's deposition was his lease agreement with M&P, his initial claim statement with Midlands, and a copy of his driver's license. Attached to Mr. Weary's deposition was the lease agreement with M&P and a motor carrier transportation agreement from M&P. In opposition, Mr. Winfield filed into evidence the transcript of his

deposition, the transcript of Mr. Weary's deposition, the transcript of Renee Sullivan's deposition, and the transcript of John "Jay" Cooper Fulton, Jr.'s deposition.

*Winfield Deposition*

When asked in his deposition if he was a direct employee of RXO, Mr. Winfield stated that RXO paid M&P, and then M&P paid him. He owned his own truck and leased it to M&P. From 2018 to 2020, Mr. Winfield only made deliveries for RXO, and was directed by RXO to do so. Mr. Winfield did not receive any specialized training by RXO on how to transport its cargo, but he did go through an orientation with M&P where he learned how to properly hook up a trailer and crank the landing gear. Neither he nor his truck had any identification or signage to indicate that he worked for RXO. His tax forms were issued through M&P, and he had signed a lease agreement with M&P.

The lease agreement, signed by Mr. Winfield on June 6, 2017, stated that Mr. Winfield was not an employee of M&P, and that M&P would not provide to him workers' compensation coverage. Under the lease agreement, Mr. Winfield was considered to be self-employed, but Mr. Winfield stated he was not aware of that until the accident happened. He began transporting exclusively for RXO after a suggestion to do so from a fellow trucker. Mr. Winfield did not need permission from M&P to work exclusively with RXO. He stated that RXO would occasionally issue him a "comcheck" for doing extra work, such as working on holidays.[4] He received a "comcheck" from RXO "three or four times."

When he would receive a dispatch call from RXO, Mr. Winfield stated he had no say as to when or where he could make the delivery. Mr. Winfield stated, "if [RXO] says it's ready, you need to go get it," and the delivery destinations

_____

[4] Mr. Winfield explained a "comcheck" as, "That's the check they give you or a number to go to the truck stop and cash the number in."

would be determined by RXO. Mr. Winfield could, however, decline to transport the load for RXO if he wished, and would not be paid for it. Mr. Winfield testified that aside from getting dispatch calls, he had no other interactions with RXO.

Mr. Winfield stated that following his accident, he filled out a claim form for Midlands, the insurer for M&P. Midlands then started paying him $700.00 a week for wage loss, and for his initial visit to the hospital. At the time of his deposition, on March 4, 2022, Mr. Winfield was still receiving $700.00 a week from Midland. He also stated that Midlands had begun paying the copays for his medical treatment. Mr. Winfield stated that he paid for the Midlands policy via deductions on his paychecks from M&P. Mr. Winfield thought he was covered by workers' compensation through M&P, but after his accident, discovered that he was not covered. He never had any discussions with RXO concerning workers' compensation. Mr. Winfield stated that as of the time of the deposition, he was still updating Midlands on his medical status. He also stated that since the accident, RXO would call him from time to time, just to see how he was doing, but they never discussed workers' compensation.

In describing the nature of his work for RXO, Mr. Winfield stated:

> I would start on Monday morning, I would go there and drop my empty trailer, drop it, I would get my – hook up to my loader trailer, do an inspection… close the doors on it, and be ready to go, to roll out to go to on to my stop. And when I get to my stop, most of the time I had to unload it. You know, I bring it to the back of the trailer.

He would not have to load the trailer himself. In describing how he unloaded the trailer, he would move the load to the end of the trailer, and then someone from the Purina plant would remove it. Although the trailers Mr. Winfield transported were owned by RXO, RXO's name did not appear on the outside of the trailer. Based on his activities with RXO, Mr. Winfield believed he was working for RXO at the time of the accident.

9

*Weary Deposition*

Mr. Weary testified in his deposition that he was the owner of M&P from 1995 to 2008, and then a co-owner from 2008 to 2012 or 2013. He was employed by M&P on the date of Mr. Winfield's accident. Mr. Winfield notified Mr. Weary of the accident shortly after it occurred. He also acknowledged that M&P had a lease agreement with Mr. Winfield. Mr. Winfield owned and drove his truck, leasing his services to M&P. Mr. Weary denied signing the lease agreement, dated June 6, 2017, stating that another owner, Louis Gaulden, Jr., had signed the lease agreement. However, the signature on the lease agreement appears to be "Mose Weary."[5] Mr. Weary stated that Mr. Gaulden would sign as Mose Weary, owner of M&P, while M&P's ownership was in "limbo of transitioning from one owner to the other." Regardless, Mr. Weary explained he was authorized to execute the lease agreement on behalf of M&P. Mr. Weary testified he was unsure if he had any ownership interest in M&P in 2017 or 2018.

Mr. Weary also denied executing the motor carrier transportation agreement, stating that Mr. Gaulden would have executed the agreement with Mr. Winfield, even though the contact person listed on the agreement is Mr. Weary, and Mr. Gaulden's name does not appear on the agreement. Mr. Weary testified that Mr. Winfield informed him that he would begin transporting cargo for RXO, and that M&P had no involvement with Mr. Winfield's relationship with RXO, other than paying him for the deliveries pursuant to the motor carrier transportation agreement. Mr. Weary explained that at the time of the accident, Mr. Winfield was "under contract with M&P." He stated that Mr. Winfield was not an employee of M&P, but an independent contractor. Mr. Weary testified that owner/operators of trucks making deliveries for M&P would have decals on the truck identifying them

---

[5] Mr. Gaulden was deceased at the time of Mr. Weary's deposition.

as M&P vehicles, and possibly some tracking devices so M&P could monitor the locations and mileages of the trucks.

*Sullivan Deposition*

Renee Sullivan, a clerical employee of M&P at the time of Mr. Winfield's accident, verified that Mr. Weary electronically signed the motor carrier transportation agreement pertaining to Mr. Winfield. She stated that Mr. Weary and Mr. Gaulden had authority to sign contracts on behalf of M&P. Ms. Sullivan also verified that Mr. Winfield was an owner-operator who leased his truck to M&P. After Mr. Winfield's accident, she initiated his occupational accident claim with Midlands and sent him the paperwork to submit his claim. Ms. Sullivan stated that M&P had a brokerage contract with RXO, where RXO paid M&P for deliveries made to them, and then M&P would pay the drivers, but specified that the only driver delivering to RXO was Mr. Winfield. Mr. Winfield independently booked the delivery to RXO, instead of M&P's dispatcher, and then Mr. Winfield would send to M&P confirmation of the delivery. She explained that where Mr. Weary, as dispatcher, would normally book deliveries for drivers, Mr. Winfield would "cut out the middleman" and book deliveries with RXO himself.

Ms. Sullivan stated that Mr. Winfield was not a "company driver" for M&P, but an "independent contractor." However, M&P maintained a personnel file on Mr. Winfield. Ms. Sullivan testified that if one of M&P's drivers was injured, the driver would have handled the workers' compensation claim with her. However, Mr. Winfield never spoke to her about workers' compensation, and she only sent the claim form to Mr. Winfield so that he could handle his claim. She stated that in order for M&P to pay its premiums to Midlands, M&P would deduct a portion from the drivers' paychecks, including Mr. Winfield's. Ms. Sullivan stated M&P issued Mr. Winfield a W-9 tax form for income tax purposes.

11

*Fulton Deposition*

Mr. Fulton, Vice President of Operations for RXO, testified that independent contractors of trucking companies such as M&P who made deliveries for RXO were not treated as employees of RXO. From observing the relationship Mr. Winfield had with M&P, Mr. Fulton believed that Mr. Winfield was a driver for M&P. He stated that for a driver of a company to communicate directly with RXO, that driver would need to be validated by the company for which he worked. Therefore, since M&P had a contract with RXO, Mr. Fulton believed that Mr. Winfield was a driver under M&P's authority. If Mr. Winfield had been acting independently, he would have had to execute an agreement with RXO, just as M&P had done; but to Mr. Fulton's knowledge, Mr. Winfield did not have a contract with RXO. Mr. Fulton was not aware that Mr. Winfield drove a truck that he owned.

Mr. Fulton acknowledged that RXO had issued a "comcheck" to Mr. Winfield on certain occasions, and that it was issued directly to Mr. Winfield with permission from M&P. A "comcheck" would only be issued for reimbursements, such as in the purchase of fuel or equipment. Mr. Fulton stated that RXO would not have given Mr. Winfield instructions on how to reach the delivery destination, but that M&P would give those instructions to Mr. Winfield. Mr. Fulton reviewed the motor carrier transportation agreement between Mr. Winfield and M&P, and he acknowledged that RXO was not a party to that agreement.

As far as RXO's direct communication with Mr. Winfield, Mr. Fulton testified that a driver, whether self-employed or working for a trucking company, could call RXO for details and specifics needed to successfully deliver a load to a destination, such as time and location of delivery, once RXO had validated that driver with the company he or she works for. Based on the agreement RXO had

12

with M&P, it was Mr. Fulton's understanding that M&P, and not Mr. Winfield, was making deliveries on behalf of RXO.

*Analysis*

As the movers, the defendants had the burden of proof on summary judgment; however, because they would not bear the burden of proof at trial, they were required to point out to the trial court the absence of factual support for one or more elements of the Mr. Winfield's claim. See La. C.C.P. art. 966(D)(1); *Jenkins v. Hernandez*, 2019-0874 (La. App. 1 Cir. 6/3/20), 305 So.3d 365, 372, writ denied, 2020-00835 (La. 10/20/20), 303 So.3d 315. Central to this case is the question of whether Mr. Winfield was an employee of RXO or an independent contractor of RXO, eligible for workers' compensation benefits from RXO due to the manual labor exception of La. R.S. 23:1021(7). We find that RXO has sufficiently proven that Mr. Winfield is neither an employee of RXO, nor an independent contractor under the manual labor exception, such that he would be eligible for workers' compensation benefits.

There is no evidence in the record of a contract of employment between Mr. Winfield and RXO. All contracts submitted as evidence are between Mr. Winfield and M&P. Mr. Winfield was the owner-operator of his own truck who, besides leasing his services to M&P, verbally agreed to deliver loads on behalf of RXO on his own volition. "Owner-operator," is defined by La. R.S. 23:1021(10), in pertinent part, as:

> a person who provides trucking transportation services under written contract to a common carrier, contract carrier, or exempt haulers which transportation services include the lease of equipment or a driver to the common carrier, contract carrier, or exempt hauler. An owner operator, and the drivers provided by an owner operator, are not employees of any such common carrier or exempt hauler for the purposes of this Chapter if the owner operator has entered into a written agreement with the carrier or hauler that evidences a relationship in which the owner operator identifies itself as an independent contractor.

Under the above definition, Mr. Winfield would not be an employee of either M&P or RXO. Although RXO would naturally instruct Mr. Winfield on the times and locations that loads must be picked up and delivered, Mr. Winfield acknowledged that he had the prerogative to decline making a delivery for RXO, and doing so would not terminate his relationship with RXO. He was free to agree to make a subsequent delivery for RXO if he chose to do so. So long as the deliveries were made at the correct location and time, Mr. Winfield received no instruction from RXO as to the routes he took.

Mr. Winfield never took direct payment from RXO. RXO first paid M&P for the delivery, and then M&P would pay Mr. Winfield. Although Mr. Winfield received "comchecks" directly from RXO, these payments were reimbursements for extra mileage, equipment purchases, or other personal expenses to Mr. Winfield while he was on a delivery for RXO. Since Mr. Winfield could choose whether or not to make a delivery for RXO, he did not have a definite term of employment or quantity of work to complete for RXO. Moreover, RXO did not issue to Mr. Winfield a W-2 or W-9 tax form, which would have indicated that RXO viewed him as an employee or independent contractor, respectively. Moreover, RXO did not maintain a workers' compensation policy under which Mr. Winfield was covered.

Mr. Winfield would often have to physically load his trailer and sometimes would move his load to the end of the trailer so that others could physically unload it. However, in order for an independent contractor to fall within the manual labor exception, "a substantial part of the work time of an independent contractor must be spent in manual labor by him in carrying out the terms of the contract[.]" La. R.S. 23:1021(7). Here, the majority of the work performed by Mr. Winfield on behalf of RXO involved driving his truck for extended periods of time from one location to another. See Coleman, 886 So.2d at 473.

14

Based on our complete review of the record, we find that the defendants have successfully carried their burden to prove that, at the time of Mr. Winfield's accident, he was not employed by RXO, and he was not an independent contractor for RXO included under the manual labor exception. The record also lacks support for Mr. Winfield's claim that he was an employee of RXO or an independent contractor that met the manual labor exception. Because Mr. Winfield's response fails to set forth specific facts showing that there is a genuine issue for trial, the OWC was correct in granting summary judgment in favor of the defendants. See *Rixner v. Our Lady of the Lake Hospital, Inc.*, 2019-0818 (La. App. 1 Cir. 6/16/20), 306 So.3d 444, 448.

## ANSWER TO THE APPEAL

In their answer to the appeal, the defendants have requested attorney fees for their defense of the instant appeal. When the trial court awards a party attorney fees, and the party is then forced to and successfully defends an appeal, it is appropriate for the appellate court to reasonably increase the amount of the awarded attorney fees to keep the appellate judgment consistent with the underlying judgment. *Millican v. Wade*, 2023-1050 (La. App. 1 Cir. 2/23/24), 384 So.3d 1011, 1017. In the instant case, the defendants were not awarded attorney fees by the trial court; therefore, we find it inappropriate to award the defendants attorney fees in defending the instant appeal. The defendant's answer to the appeal is dismissed.

## DECREE

The August 20, 2025 summary judgment rendered by the Office of Workers' Compensation, District 5 in favor of the defendants, Indemnity Insurance Company of North America and 28277 RXO Capacity Solutions, LLC, and

15

dismissing Mr. Winfield's claims against them with prejudice is affirmed. The defendants' answer to the appeal is dismissed. All costs of this appeal are assessed against Mr. Winfield.

**AFFIRMED; ANSWER TO APPEAL AND REQUEST FOR ATTORNEY'S FEES DISMISSED.**